IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

YVES EUGENE ADAMS,
CESAR REYES,
PAM PHILPOTT,
BRANDON PHILPOTT,
individually and on behalf
of those similarly situated,                                      PLAINTIFFS

vs.                          NO. 13-CV-5074

BENTON COUNTY SHERIFF KELLY CRADDUCK,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,
KEEFE COMMISSARY NETWORK, LLC,                                    DEFENDANTS

### FIRST AMENDED COMPLAINT -- CLASS ACTION

COME NOW the Plaintiffs Yves Eugene Adams, Cesar Reyes, Pam Philpott, and Brandon Philpott, and for their Complaint, made on their own behalf and behalf of those similarly situated, against Defendant Benton County Sheriff Kelly Cradduck, in his individual and official capacity, and Keefe Commissary Network, LLC, state and allege:

### SUMMARY

1.      This Complaint arises out of the policy and custom of the Defendant Benton County Sheriff Cradduck to convert part of the money belonging to persons who are booked into the Benton County Jail. Under this policy, cash money that is in the possession of an arrestee is not returned to its rightful owner, but is instead converted into a prepaid debit card with numerous exorbitant fees which are paid to Defendant Keefe. These fees are paid to Defendant Keefe in consideration of a kickback that Defendant Cradduck receives from Defendant Keefe for commissary purchases by Benton County Jail inmates from Defendant Keefe.

## PARTIES AND JURISDICTION

2. Plaintiff Yves Eugene Adams is an individual and has at all times relevant hereto been a citizen and resident of Benton County, Arkansas.

3. Plaintiff Cesar Reyes is an individual and has at all times relevant hereto been a citizen and resident of Benton County, Arkansas.

4. Plaintiff Pam Philpott is an individual and has at all times relevant hereto been a citizen and resident of Benton County, Arkansas.

5. Plaintiff Brandon Philpott is an individual and has at all times relevant hereto been a citizen and resident of Benton County, Arkansas.

6. Plaintiff Yves Eugene Adams is an individual and has at all times relevant hereto been a citizen and resident of Benton County, Arkansas.

7. The Defendant Benton County Sheriff Kelly Cradduck is the chief law enforcement officer for Benton County, Arkansas, and is charged with and authorized under Arkansas state law with exercising certain functions and powers, including but not limited to, operating the Benton County Jail, preserving the seized property of inmates, protecting the welfare of inmates, contracting with suppliers of goods and services for the operation of the Benton County Jail, and making, implementing and enforcing policy for the protection of the welfare and property of pretrial detainees and inmates who are booked into and/or housed at the Benton County Jail. The policymaking authority of Defendant Cradduck extends to and has been exercised by establishing the specific policies that are challenged herein, including Benton County Sheriff's Office County Jail Policy & Procedures No. X-10. Action by Defendant Cradduck is action under color of state law.

8. The Defendant Keefe Commissary Network, LLC, is a foreign for profit limited

liability company. On information and belief, Defendant Keefe is a limited liability company organized and existing under the laws of the state of Missouri. The agent for service for Defendant Keefe is The Corporation Company, 124 West Capitol Ave., Suite 1900, Little Rock, Arkansas 72201. Defendant Keefe has contracted with Defendant Cradduck for the exclusive right to provide certain commissary and prepaid debit card jail services including but not limited to those challenged herein. Due to its position, entanglements and the nature of the services it provides, Defendant Keefe is a willful participant with Defendant Cradduck in depriving Mr. Adams and the Class members of their constitutionally protected rights. As a result, all relevant action by Defendant Keefe is action under color of state law.

9. This court has jurisdiction over the individual plaintiffs' and the Class members' claims under 28 U.S.C. § 1331, as these claims arise under the constitution and laws of the United States, specifically, under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and also has jurisdiction under 28 U.S.C. § 1443. This court has supplemental jurisdiction over the pendent state law claims of conversion and/or trespass to chattels under 28 U.S.C. § 1367.

10. The individual plaintiffs' and the Class members' claims in this action arose within Benton County, which is within this judicial district. Venue is therefore proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## CLASS ACTION ALLEGATIONS

11. This suit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(1)(a), 23(b)(2) and 23(b)(3).

12. The members of the Plaintiff Class are as follows: All persons from whom cash money (currency and/or coin) was seized upon their arrest or booking into the Benton County Jail

and to whom the money was returned in the form of a prepaid debit card or cards at any time after April 19, 2012 to the present.

13. **Numerosity**: According to Defendants' records, the Plaintiff Class consists of approximately 2,269 members as of April 5, 2013, and is increasing by approximately six members per day that the Defendants continue their actions. All information necessary to determine the numerosity and identity of the Class members is contained in the "Prepaid Debit Cards Issued" and related records that are maintained by Defendants, and joinder of this number of plaintiffs is impracticable.

14. **Commonality**: The actions of Defendants result from a single policy and set of contracts agreed to, adopted and implemented by Defendant Cradduck in agreement with Defendant Keefe. A true and correct copy of the policy that is at issue herein, Benton County Sheriff's Office County Jail Policy & Procedures No. X-10, is attached hereto as Exhibit 1. This policy was adopted in order to implement two contracts between Defendant Cradduck and Defendant Keefe. True and correct copies of these contracts are attached hereto as Exhibit 2 and 3. The common issues of fact and law involved in the claims of the members of the class include, but are not limited to, the following:

   a. Whether on or after April 19, 2012, Defendants adopted a policy and/or custom of returning cash money (currency and/or coin) seized from Class members in the form of a prepaid debit card with associated fees.

   b. The schedule of fees charged to Class members related to the prepaid debit cards which are the method by which money seized from the Class members is returned to them, and the method of calculation of the Class members' damages.

   c. Whether Defendants' policy and/or custom of issuing a prepaid debit card with

    associated fees rather than returning the money taken from Class members violates the Fourth and Fourteenth Amendments to the United States Constitution.

  d. Whether Defendants' policy and/or custom of issuing a prepaid debit card with associated fees rather than returning the money taken from Class members constitutes a conspiracy to violate civil rights under 42 U.S.C. § 1985(3).

  e. Whether Defendants' policy and/or custom of issuing a prepaid debit card with associated fees rather than returning the money taken from Class members constitutes conversion or trespass to chattels under Arkansas state law.

  f. The availability and validity of any defenses asserted by Defendants, and particularly immunity-based defenses.

15. **Typicality**: The adjudication of the individual plaintiffs' claims encompasses the claims of the members of the Class. They arise from the same policy, contracts and course of conduct and the same legal theories as the rest of the Class, and the individual plaintiffs challenge the actions of the Defendants with respect to the Class as a whole.

16. **Adequacy of representation**: The individual plaintiffs believe in the legitimacy of their grievances and have consistently sought to protect their rights, including but not limited to by voicing objection to this policy at the time that they learned of it, and insisting that their money be returned. These objections were flatly denied by Defendant Cradduck based upon the policy that is challenged herein. The individual plaintiffs and class representatives have retained Class counsel that is experienced in similar actions, and does not have any conflict with other members of the Class.

17. The common questions of fact and law relating to liability, defenses, and the method of calculating damages as stated above predominate over the limited individual questions

relating to the amount of damages, which is a purely ministerial act of calculation of the fees incurred once the common issues are resolved.

18. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because a class action promotes judicial efficiency in that it will be easier for the Court to manage and will avoid a multiplicity of actions, many of which would involve small claims handled by *pro se* plaintiffs if at all, since a significant percentage of Class members are likely to be incarcerated and ill-equipped to prosecute such actions. The average amount placed upon a prepaid debit upon a Class member's release from the Benton County Jail is $88.74 (as of April 5, 2013). The fees charged these Class members range from $1.50 to $38.00 per transaction using the prepaid debit card.

## FACTUAL SUMMARY

19. On or about April 2, 2012, Defendant Cradduck, by and through his predecessor in office then-Benton County Sheriff Keith Ferguson (referred to herein as Defendant Cradduck), executed a contract with Defendant Keefe. A true and correct copy of this contract is attached hereto as Exhibit 2.

20. Under this contract, Defendants agreed to provide commissary services to persons detained in the Benton County jail for specified inflated prices and upon certain terms. One of these terms was that Defendant Keefe would pay a kickback to Defendant Cradduck of 34% of "adjusted gross sales" of gross commissary sales, less certain noncommissioned items. The list of noncommissioned items is attached hereto as Exhibit B to Exhibit 2. This kickback is expressly identified and referred to as a "service fee" in the contract between the Defendants.

21. On or about April 19, 2012, Defendant Cradduck executed a contract with Defendant Keefe for the provision of services regarding prepaid debit cards for inmates. A true

and correct copy of this contract is attached hereto as Exhibit 3.

22. Defendant Cradduck adopted and implemented the terms of these contracts in Benton County Sheriff's Office County Jail Policy & Procedures No. X-10. *See* Exhibit 1.

23. Under this contract (Exhibit 3) and the policy (Exhibit 1), Defendant Cradduck has agreed with Defendant Keefe that money seized from arrestees and/or inmates is to be involuntarily placed into a "designated account." Defendant Cradduck has purported to authorize Defendant Keefe to withdraw and convert funds properly belonging to the Class members from this designated account, to the injury of the Class members. This agreement is part of the *quid pro quo* for the kickback that Defendant Cradduck receives under the Commissary Agreement that is attached as Exhibit 2. This Agreement includes a schedule of fees that are involuntarily charged to inmates for the use (and failure to use) the prepaid debit card.

24. On February 24, 2013, Mr. Adams was arrested on a charge of, *inter alia*, suspicion of public intoxication. At the time of his arrest, Mr. Adams had $613.00 in cash money (currency) in his possession.

25. After his arrest, Mr. Adams was booked into the Benton County Jail, where he spent the remainder of the night.

26. On February 25, 2013, Mr. Adams was released from the Benton County Jail on a bond written by licensed bondsman Chris Lockhart. At the time of his release, Mr. Adams asked the deputies of Defendant Cradduck for the return of his money in order to pay Mr. Lockhart for the fees related to the bond.

27. On April 9, 2013, Mr. Reyes surrendered himself and was arrested on three misdemeanor charges of failure to appear. At the time of his arrest, Mr. Reyes had $1180.22 in cash money (currency and coin) in his possession.

28. After his arrest, Mr. Reyes was booked into the Benton County Jail, where he spent the remainder of the day, the next day, and was released the next night.

29. On April 10, 2013, Mr. Reyes was released from the Benton County Jail on a bond written by licensed bondsman Chris Lockhart. At the time of his release, Mr. Reyes asked the deputies of Defendant Cradduck for the return of his money in order to pay Mr. Lockhart for the fees related to the bond.

30. On July 6, 2012, Ms. Philpott surrendered herself to begin serving a sentence for driving while intoxicated. At the time of her booking, Ms. Philpott had $600.00 in cash money (currency and coin) in her possession, of which (after commissary purchases) $110.09 remained at the time of her release.

31. Ms. Philpott was booked into the Benton County Jail, where she spent approximately 45 days.

32. On August 23, 2012, Ms. Philpott was released from the Benton County Jail. At the time of her release, Ms. Philpott asked the deputies of Defendant Cradduck for the return of her money.

33. On October 31, 2012, Mr. Philpott was arrested in Benton County on a misdemeanor charge of failure to appear. At the time of his arrest, Mr. Philpott had $10.00 in cash money (currency and coin) in his possession, of which (after additional cash deposits and commissary purchases) $97.00 remained at the time of his release.

34. Mr. Philpott was booked into the Benton County Jail, where he spent approximately nine days.

35. On November 9, 2010, Mr. Philpott was released from the Benton County Jail. At the time of his release, Mr. Philpott asked the deputies of Defendant Cradduck for the return of

his money.

36. Each of the individual plaintiffs was subjected to the policies and practices of the Defendants which are challenged herein. Solely as a result of these policies and practices, the plaintiffs were each issued an unwanted prepaid debit card rather than the currency and coin which they legitimately owned and possessed and which was seized from them by Defendant Cradduck's deputies when they were released from the Benton County Jail.

37. When the individual plaintiffs requested their money, the deputies of Defendant Cradduck refused to return it pursuant to Benton County Sheriff's Office County Jail Policy & Procedures No. X-10. These deputies of Defendant Cradduck informed the plaintiffs that the only way that they could receive their money (currency and coin) was in the form of a prepaid debit card under Defendant Cradduck's policy.

38. As a result of this policy and practice, the cash (currency and coin) that was seized by Defendant Cradduck from the individual plaintiffs when they were arrested was never returned to them. Instead, Cradduck's deputies issued a prepaid debit card to each plaintiff in the following amounts:

| | |
|---|---|
| Yves Adams: | $ 613.00 |
| Cesar Reyes: | $1,180.22 |
| Pam Philpott: | $ 10.09 |
| Brandon Philpott: | $ 97.00 |

39. Mr. Adams used the card to withdraw money from an ATM in order to pay for his bond, a transaction that improperly and illegally cost him $2.75 according to the Schedule of Fees (part of Exhibit 3) to complete. Mr. Reyes also used his card to withdraw money from an ATM in order to pay for his bond, a transaction that improperly and illegally cost him $2.75 according to the

Schedule of Fees (part of Exhibit 3) to complete. Ms. Philpott and Mr. Philpott did not use their cards to pay for a bond, but used them for other transactions in order to exhaust the balances upon the cards which incurred fees according to the Schedule of Fees (part of Exhibit 3) to complete.

40. The individual plaintiffs actively sought to obtain their money and minimize the amount of the improper and illegal fees that they incurred in doing so, but were nevertheless repeatedly charged fees, according to the schedule of fees contained in Exhibit 3, to access their own money that should have been returned to them in the same state in which it was seized. Similar charges were charged to all Class members.

41. The Class members have no adequate remedy at law for the adverse consequences of Defendants' actions that continue unabated to the present.

42. Unless Defendants are immediately restrained from their actions, the Class members will continue to suffer irreparable injury.

## First Cause of Action:
## Deprivation of Federal Rights Under Color of State Law (42 U.S.C. § 1983)

43. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

44. Defendants have, under color of state law, deprived the individual plaintiffs and the Class members of their protected property interests in their own personal property, *to wit*, their own cash money (currency and/or coin) which they possessed at the time of arrest and/or booking without due process of law, and in an unreasonable manner, in violation of the Fourth and Fourteenth Amendments of the United States Constitution as incorporated against the states by the Fourteenth Amendment to the United States Constitution, by committing the actions described hereinabove.

45. In each of these actions, Defendants were acting under the color of their authority under state law.

46. As a direct and proximate result of the willful and malicious actions of the Defendants, the individual plaintiffs and the Class members have suffered and continue to suffer, monetary loss, including but not limited to the following: loss of use of their seized funds, the inconvenience imposed by the issuance of a debit card, and the amount of the fees charged, all in an amount in excess of the amount required for federal diversity jurisdiction.

47. The Class members are continuing to suffer similar harm as a direct and proximate result of the willful and malicious actions of the Defendants.

## Second Cause of Action: Conspiracy to Violate Civil Rights (42 U.S.C. § 1985(3))

48. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

49. By their agreement and cooperation in implementing executing the debit card contract and policy challenged herein, Defendants have been and continue to be engaged jointly in a conspiracy with the purpose and effect of depriving the individual plaintiffs and the Class members of their federally protected civil rights as more specifically described herein.

50. By their knowledge that the debit card contract and policy will result in nonconsensual fees to the Class members which diminishes the value of the property of the class members, the Defendants' conspiracy is undertaken with the purpose and effect of directly and/or indirectly depriving the Class members of their constitutionally protected rights.

51. By their actions complained of herein, both Defendants have engaged in numerous overt acts in furtherance of the object of the conspiracy, including but not limited to the actual execution a written contract, establishment and/or maintenance of a "designated account," the

issuance of prepaid debit cards in lieu of the return of cash money and the collection of fees related to these debit cards.

52. As a direct and proximate result of the willful and malicious actions of the Defendants, the individual plaintiffs and the Class members have suffered and continue to suffer, monetary loss, including but not limited to the following: loss of use of their seized funds, the inconvenience imposed by the issuance of a debit card, and the amount of the fees charged, all in an amount in excess of the amount required for federal diversity jurisdiction.

53. The Class members are continuing to suffer similar harm as a direct and proximate result of the willful and malicious actions of the Defendants.

### Third Cause of Action: Conversion / Trespass to Chattels

54. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

55. Without the individual plaintiffs' or the other Class members' consent, Defendants have intentionally and wrongfully taken, interfered and intermeddled with property to which they have no legal right nor colorable legal claim, and which rightfully belongs to the individual plaintiffs and the Class members.

56. As a direct and proximate result of the willful and malicious actions of the Defendants, the individual plaintiffs and the Class members have suffered and continue to suffer, monetary loss, including but not limited to the following: loss of use of their seized funds, the inconvenience imposed by the issuance of a debit card, and the amount of the fees charged, all in an amount in excess of the amount required for federal diversity jurisdiction.

57. By their actions of the Defendants have committed the torts of conversion and/or trespass to chattels under Arkansas state law.

58. The Class members are continuing to suffer similar harm as a direct and proximate result of the willful and malicious actions of the Defendants.

### Jury Demand

59. The individual plaintiffs and the Class members hereby request a jury trial.

WHEREFORE, the Plaintiff and Class members pray this Court:

a. Grant the individual plaintiffs and the Class members compensatory damages in an amount sufficient to compensate them for their losses, and in excess of the amount necessary for federal jurisdiction in diversity cases;

b. Grant the individual plaintiffs and the Class members punitive damages in an amount sufficient to deter Defendants and their agents from similar misconduct;

c. Award the individual plaintiffs and the Class members a reasonable attorneys' fee in this cause;

d. Award the individual plaintiffs and the Class members their costs herein;

e. Award the individual plaintiffs and the Class members pre-judgment and post judgment interest on the wrongfully seized money;

f. Grant the individual plaintiffs and the Class members a temporary restraining order, preliminary injunction and permanent injunctive relief restraining Defendants, their employees and agents and other persons covered by Rule 65 from engaging in the actions that are challenged herein.

g. Grant the individual plaintiffs and the Class members declaratory judgment that the actions of Defendants violate their rights; and

h. Grant all other proper relief.

By: _____

Charles M. Kester, ABA #94238
THE KESTER LAW FIRM
P.O. Box 184
1160 North College Ave.
Fayetteville, AR 72702-0184
(479) 582-4600
(479) 571-1671 (Facsimile)

and

Monzer Mansour, ABA #97144
212½ E. Emma Ave.
Springdale, AR 72764
(479) 751-3411
(479) 751-3412 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of June 2013, I electronically filed the foregoing with the Clerk of the United States District Court for the Western District of Arkansas, using the CM/ECF system which sent notification of such filing to all CM/ECF participants of record, and hereby certify that I am mailing the document by electronic transmission and/or United States Postal Service to all non-CM/ECF participants, none of whom are known to exist.

/s/ Charles M. Kester