IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

YVES EUGENE ADAMS; CESAR REYES;
PAM PHILPOTT; and BRANDON PHILPOTT,
each individually and on behalf of all others
similarly situated                                                                    PLAINTIFFS

v.                                   Case No. 5:13-CV-5074

BENTON COUNTY SHERIFF KELLY
CRADDUCK, in his individual and official
capacities; and KEEFE COMMISSARY
NETWORKS, LLC                                                                        DEFENDANTS

## ORDER

Currently before the Court is a motion (Doc. 69) for attorney's fees, costs, and incentive fees filed by Plaintiffs Yves Eugene Adams, Cesar Reyes, Pam Philpott, and Brandon Philpott, as well as a memorandum brief (Doc. 70) and supplement to memorandum brief (Doc. 72) in support. On August 30, 2017, the Court adopted the Magistrate Judge's report and recommendation (Doc. 73) which recommended final approval of the class action settlement and cy pres distribution of unclaimed funds from the settlement. The Court will now address the motion for attorney's fees and incentive fees requested by Plaintiffs and class counsel.

The facts of Plaintiffs' claims are set forth in the Magistrate Judge's report and recommendation. In this Court's order granting preliminary approval of the proposed class settlement and class certification (Doc. 64), it appointed Monzer Mansour as class counsel. The settlement agreement (Doc. 60) entered into by the parties provided that Defendants would pay class counsel an attorney's fee and costs, as authorized by the Court, up to but not more than $50,385.00. The settlement agreement further provided that each named Plaintiff would be paid an incentive fee, as authorized by the Court, up to but not more than $1,000.00. The instant motion

seeks Court approval of attorney's fees and incentive fees for the maximum amount provided under the settlement agreement.

The settlement agreement provided that the total amount paid to the class members would be $13,224.58 (Doc. 60, ¶ 5.1). The order (Doc. 74) adopting the report and recommendation and granting final approval to the class settlement provided that after checks were mailed to the class members, the settlement account would remain open for two years for checks to clear. For checks that did not clear, the remaining funds would be placed in a jail account for the respective class member for 180 days. The jail accounts would then be closed and the remaining settlement funds paid to the cy pres recipient, rather than revert to Defendants[1]. Therefore, this settlement agreement results in a 100% payout of the settlement amount when paid to the class members or the cy pres recipient. As of the date of the hearing for final approval of the settlement agreement, checks totaling $4,385.79 had been paid to 448 class members. This leaves $8,838.79 in settlement proceeds being held for the commissary account of the respective class members or ultimately paid to the cy pres recipient. The settlement agreement also provided Defendants would pay $8,000.00 in costs incurred by the claims administrator through the conclusion of the claims program. As provided in the settlement agreement, the Court appointed Benton County as the claims administrator. While Benton County was not a named defendant, Defendant Kelly Cradduck, the Benton County sheriff, was sued in his official capacity, which is actually a suit against Benton County, the claims administrator.

The Magistrate Judge's report and recommendation evaluated the merits of Plaintiffs' claims to determine if the settlement was fair, reasonable and adequate. The Magistrate Judge noted that

---

[1] Separate Defendant Keefe Commissary Network, LLC was dismissed upon preliminary approval of the settlement agreement, leaving Defendant Kelly Cradduck as the sole defendant.

Plaintiffs' claim for the tort of conversion was the strongest of the claims, and that Plaintiffs' § 1983 claim was the weakest. Citing *Mickelson v. County of Ramsey*, 823 F.3d 918 (8th Cir. 2016), the Magistrate Judge concluded that Plaintiffs were not likely to prevail on their § 1983 claim because debit card fees charged to prisoner accounts was considered de minimus and did not trigger a constitutional due process violation. Plaintiffs likewise conceded it would be difficult to prevail on the § 1985 claims. The Magistrate Judge concluded that the settlement, which provided for a 100% payout of the recovery for the class members, was fair, reasonable and adequate. The tort of conversion claim was not complex, and the § 1983 claim, while novel, was later determined not to be a viable claim based on *Mickelson*. Since the settlement agreement provided fees would not be paid out of the class members' recovery, this case is a variant of the common fund type case because there is a separate fund to pay attorney's fees.

Attorneys' fees in class action settlements are usually calculated according to the "lodestar" method, which multiplies the hours reasonable expected by a reasonable hourly rate. *Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1188 (N.D. Iowa 2003). A lodestar analysis is not mandatory, however, and where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart*, 461 U.S.424, 436 (1983). The most critical factor is the degree of success obtained, *id.* at 429, but the process for arriving at reasonableness is the "the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular activity in the particular matter for which fees are requested and the efficiency with which the plaintiffs' attorneys conducted that activity." *Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997). A court should also use its own knowledge, experience and expertise in determining the fee to be awarded. *Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063, 1066-67

(8th Cir. 1989).

Plaintiffs and class counsel seek an attorney's fee and costs for the maximum amount Defendants agreed to pay under the settlement agreement, which is $58,385.00. Plaintiffs argue this amount is justified based on the amount of hours expended by class counsel and his predecessor counsel, which would be 246.3 hours with the attorney's fees calculated at $68,020.00. In order for the Court to consider reasonableness of this fee request, it must first look to the "usefulness of plaintiffs' activity… and the efficiency with which plaintiffs' attorneys conducted the activity." *Jenkins*, at 718. Because a determination of a reasonable attorney's fees begins with a "lodestar" analysis, the Court will look to the billing records of predecessor counsel and class counsel (Doc. 70-1, 70-4).

The docket in this case sets forth the activity that occurred in the case, along with counsels' billings records. The predecessor counsel[2] to class counsel expended significant time and effort in drafting the pleadings which included the complaint and several motions. The motions were never ruled upon, as the parties notified the Court[3] on December 20, 2013 that a settlement had been reached and requested that the motions be withdrawn (Doc. 38). The case had been pending for approximately eight months when the parties entered into their first settlement agreement (Doc. 37). Predecessor counsel recorded over 132 hours and class counsel recorded over 47 hours at the time the first settlement agreement was reached. Based on a motion to compel discovery, it appears that discovery involved a set of interrogatories and request for admissions (Doc. 25). There were no depositions taken. The remainder of the docket, over the next three years, shows relatively

---

[2] Predecessor counsel, Charles M. Kester, died March 3, 2014, and Monzer Mansour became the primary counsel and was later appointed class counsel.

[3] Hon. Jimm Larry Hendren. The case was reassigned to the undersigned on March 13, 2014.

4

little was done other than three attempts to obtain approval of a settlement agreement. Class counsel became more involved after the death of predecessor counsel, and class counsel recorded over 70 hours after notice of the first motion for settlement. Class counsel's billing records mostly show legal work in making changes to the settlement agreement after the Court's denial of two motions to preliminary approve the settlement agreements.

The Court denied the parties' motion for preliminary approval of the first proposed class settlement (Doc. 48) on August 1, 2014. The lengthy order sets out the reasons the Court rejected the settlement agreement, with the primary reason being that it was a claims made settlement that, based on the nature of the claims and the class members, would result in an inadequate payout to class members. The Court viewed this likely low claims rate in the context of a maximum settlement fund of only $13,244.58. The parties made a second effort at a settlement agreement that addressed some of the concerns of the Court, but the Court likewise denied the motion for approval of the second settlement agreement (Doc. 52) for reasons set forth in that order. The third settlement agreement, finally addressing the concerns in the Court's previous orders, was preliminarily approved on November 17, 2016. (Doc. 64)

Class counsel now claims credit for reaching the final settlement with a 100% payout based upon a cy pres distribution if the class members do not cash their checks. However, the 100% payout primarily resulted from the Court setting out in two lengthy orders why the previous two proposed settlement agreements were not fair and reasonable to the class members. Even with the final approved settlement agreement, the recovery for the class members to date is only $4,385.79, based on 448 claims out of a class of 2,180 class members. This represents 20% of the class members. If not for the cy pres provision recommended by the Magistrate Judge, this settlement would have been de minimus much like *Mikelson,* supra. The Court does not believe that an

5

attorney's fee of $50,385.00 is reasonable when considering the nature and lack of complexity of the successful claim, which has resulted in only 20% of the class members receiving settlement proceeds, and the "efficiency with which plaintiffs' attorney conducted the activit[ies]," in reaching a settlement that was approved by the Court.

The Court finds the requested fees are an excessive amount, and the Court will reduce the number of hours to 120 hours, which the Court believes is a reasonable amount of time for the reasons stated above. The Court finds that an hourly rate of $250 per hour is a reasonable rate. The litigation consisted of the filing of a complaint, motion to compel discovery, motion for partial summary judgment, and motion for class certification. Defendant did not file any motions. No motions were ruled upon by the Court because a settlement was reached after eight months, and the motions were withdrawn. The remaining litigation activities consisted of obtaining a settlement that would be approved by the Court. The Court believes that an attorney's fee of $30,000 is reasonable compensation for the efforts of predecessor and class counsel in this case.

Plaintiff's motion also seeks approval of an incentive fee to the named Plaintiffs for their participation in the litigation. The Court finds that an incentive fee of $500.00 for each named Plaintiff is fair and reasonable.

IT IS THEREFORE ORDERED that plaintiffs' motion for attorney's fees and costs and incentive fees (Doc. 69) is GRANTED IN PART insofar as Plaintiffs are awarded attorney's fees and costs in a total amount of $30,000.00, and each named plaintiff is awarded an incentive fee of $500.00 each.

IT IS SO ORDERED this 30th day of August, 2017.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE